## Orr's Estate.

*Practice, O. C.—Sale under testamentary power—Setting aside for inadequacy of price.*

1. A sale under a testamentary power, while not primarily requiring confirmation by the Orphans' Court, is subject to its supervision and control.

2. Where an executor, acting under a testamentary power, entered into a contract to sell real estate of the decedent for an inadequate price, in reliance upon representations as to its value by his real estate agent, who had formerly been employed by decedent, and in whose integrity and capacity both the decedent and the executor implicitly relied, and the real estate agent succeeded in inducing the executor to sell the property to the agent's brother-in-law at an inadequate price upon his (the agent's) representation that the property was appraised at a certain price, without telling the executor that the appraisement had been made in 1916 and that material changes for the better had occurred in the neighborhood, and that the purchaser was his brother-in-law, the agent's failure to make a full disclosure of the facts is a circumstance which the court will lay hold of with a view to setting the sale aside.

3. Where an executor, acting under a testamentary power, has entered into an agreement to sell real estate of the decedent at an inadequate price, it is his duty, upon being advised of the inadequacy, or upon discovering any imposition upon himself by the purchaser or the purchaser's agent, to refuse to carry out the sale.

Exceptions to master's report. O. C. Phila. Co., July T., 1923, No. 2633.

The following facts appear from the master's report:

James Orr, the decedent, died Aug. 10, 1923, being seized in fee of properties Nos. 3530-32 Kensington Avenue, Philadelphia, and leaving a will dated Nov. 8, 1922, which was duly admitted to probate, by which he appointed John W. Speckman one of his executors. Letters were issued to Speckman.

The sixth item of the will reads as follows: "I order and direct by Executors, hereinafter named, or the survivor of them, to sell and dispose of all my real estate at either public or private sale or sales, for the best price or prices that may be reasonably obtained therefor, and upon receipt of the purchase money to execute to the purchaser or purchasers thereof deed or deeds in fee simple therefor, without any liability on the part of such purchaser or purchasers as to the proper application of the purchase money."

On Sept. 18, 1923, the executor entered into a written agreement with Frank Deitrich, Jr., for the sale of the above premises for $8000 cash, subject to existing mortgages of $6500, a total consideration of $14,500. In agreeing to sell for $14,500, the executor had been influenced by the statement of his agent, one Finney, who had formerly acted for the decedent, that the latter had appraised the properties at that sum. He did not tell him that the appraisement had been made in 1916 and that there had been an improvement in the neighborhood since that time or that he and Deitrich were brothers-in-law. The same day a real estate agent for the executor entered into a written agreement with one Krauser for the sale of the aforesaid premises for $18,000, clear of encumbrances. The executor approved the former of these agreements in ignorance of the fact that the latter had been made by his agent; he subsequently approved the latter, both being approved on or about Sept. 21, 1923.

The residuary legatees, through their attorneys, wrote to the master, approving the sale at $18,000. The executor refused to convey the properties to Deitrich, and he (Deitrich) thereupon filed a petition in the Orphans' Court for specific performance of the contract and for a decree restraining the executor from selling the property to any one else. A petition was also filed by Krauser, praying for a citation to show cause why specific performance of his contract for the sale should not be decreed. Deitrich filed an

answer to Krauser's petition, and the executor filed answers to both petitions. The matter was then referred to Franklin Spencer Edmonds, Esq., as master. Mr. Edmonds, after finding the above facts, recommended that Deitrich's petition be dismissed and the deposit money paid by him be returned, and that specific performance of the sale to Krauser be decreed.

The following exceptions to the master's report were filed:

1. To the master's finding that Finney had helped Deitrich to finance the properties in question, lending him the collateral upon which he had negotiated a loan to secure the cash for the purchase.

2. To the master's failure to find that Harry E. Thomson, one of the agents of the executor who had secured the sale to Krauser and who was one of the latter's witnesses, had helped Krauser in financing his purchase, as did E. Irving Shuttleworth, another of Krauser's witnesses.

3. To the finding that "there is sufficient testimony to prove a relationship between Finney and Deitrich which should have led the former to have been more explicit and candid in his dealings with the executor," etc.

4. To the finding of fact that the consideration of $14,500, offered by Deitrich was not a fair or adequate consideration for the properties.

5 and 6. To the consideration of the master of the letters from the attorneys of the residuary legatees, approving the sale to Krauser.

7. To the finding as a fact: "That, in approving the agreement of sale with Deitrich, the executor relied upon the statements of Finney as to the value of the said properties."

8, 9 and 10. To the conclusion of law that the petition of Deitrich should be dismissed and the sale to Krauser approved.

The master then filed a supplemental report, in which he corrected his first report, recommending that the second exception be sustained, although, in his judgment, the facts therein stated were immaterial.

*S. Lloyd Moore, Allen M. Stearne* and *R. M. Remick* (of *Saul, Ewing, Remick & Saul*), for exceptions.

*Fell & Spalding*, contra.

VAN DUSEN, J., Nov. 25, 1924.—The master's report states the case so well that we need not restate it here, and the cases cited by him justify his conclusion. Two of them require particular reference:

Hallowell's Estate, 2 D. & C. 183, was a case where sales of real estate were set aside for the fault of the executor, acting under a power of sale in the will, in selling a number of properties in a lump at private sale without making proper effort to get an adequate price, and without any necessity of selling the properties to pay debts. There was no fault on the part of the purchaser, who had resold the properties, and made himself liable for performance thereof and for commissions on the resale. Fricke's Estate, 16 Pa. Superior Ct. 38, was a decision setting aside a public sale by an executor under a power of sale in the will on the sole ground of inadequacy of price and upon bond being given to bid $500 more, there being no fault alleged on the part of the purchaser.

In Brittain's Estate, 28 Pa. Superior Ct. 144, it was remarked that "even a *bona fide* sale may be set aside and a resale ordered when this is manifestly to the interest of the estate." This remark was quoted by this court in Barndt's Estate, 23 Dist. R. 226. It was there said also that interference on the ground of inadequacy of price alone should be exercised only in clear cases; but the sale was set aside upon giving bond to bid 10 per cent. more. In the present case the inadequacy of the price is established by the second

Orr's Estate.

sale at an advance of over 24 per cent., and as the above cases establish the duty of the court in such circumstances, the conclusion of the master was fully justified.

It is argued that the purchaser has a right to his contract, and that if he is without fault he should be protected therein. There is no evidence in this case of fault on the part of Deitrich or that Finney was Deitrich's agent; but he was contracting with an executor, and must know that, under such circumstances, the contract may be re-examined for inadequacy of consideration. A sale under a testamentary power, while not primarily requiring confirmation by the Orphans' Court, is subject to its supervision and control: Dundas's Appeal, 64 Pa. 325; Brittain's Estate, 28 Pa. Superior Ct. 144; but will only be set aside for adequate cause in clear cases.

In the present case there is no fault charged against the executor, but there was a lack of full disclosure on the part of Finney, whom he trusted, which is at least a make-weight against sustaining the sale. Finney was the agent of the testator in the management of these properties and gave the executor the appraisement which the decedent carried on his books. He was one of the appraisers of the personal estate appointed by the executor, communicated the testator's appraisement to the executor and was the executor's agent for the sale of these properties. He had an office in the neighborhood, and he testified that he expects to receive a commission on the sale (page 28). He should have told the executor that this appraisement was made in 1916, and that material changes had taken place in the neighborhood, and that the purchaser was his brother-in-law. That he was interested in the purchase does not sufficiently appear to warrant finding it as a fact. In this respect the case falls short of those cases in which equity has refused to enforce an unconscionable bargain and has left the party to his remedy at law. In such cases there should be present the element of fault on the part of the purchaser: see, for example, Miller v. Fulmer, 25 Pa. Superior Ct. 106; Spotts v. Eisenhauer, 31 Pa. Superior Ct. 89; Mitchell v. Steinmetz, 97 Pa. 251.

The decisions first referred to were made on the objection of the parties in interest. In the present case the petition for specific performance is resisted by the executor. So far as properly appears before us (see the disposition of the fifth and sixth exceptions below), the residuary legatees do not take part; and it is argued that it is not for the executor to deny his own sale, and that only the interested parties can be heard to object. We think it is the duty of the executor to take any step for the protection of the interested parties which he thinks right, and that upon being advised of the inadequacy of the price or of imposition upon him, he may refuse to carry out the sale.

Some objections are made to the second sale by the first purchaser. He, however, has no standing in this proceeding for any purpose but that of sustaining the sale to himself. If that is not done, he has no interest in what has become of the property or what the price is at which it is eventually sold.

We will deal with the exceptions of Frank Deitrich, Jr., in order:

The first exception is dismissed; there is testimony to support the finding of fact (page 58) and no testimony to the contrary.

The second exception is sustained so far as to find the fact as requested, in accordance with the recommendation of the master in his report on the exceptions. We think, however, with the master, that the fact so found is immaterial; as already stated, one purchaser has no standing to attack the other sale.

The third exception is sustained. We feel that the emphasis here is wrongly placed on the relation of Finney to Deitrich, and that it should have

been placed on the relation of Finney to the executor. That relation required a disclosure by Finney, as stated above; but we are not to be taken as basing our conclusion on any agency of Finney for Deitrich, or any failure to disclose previous dealings between them, or that Finney pledged his own collateral to help Deitrich raise the money which he tendered to the executor. The latter event occurred subsequently. The references by the master to these facts go further than need be.

The fourth exception is dismissed.

The fifth and sixth exceptions relate to the action of the master in attaching to the record and relying in part on letters from counsel for the residuary legatees requesting approval of the sale to Leon Krauser rather than of the sale to Frank Deitrich, Jr. It was stated at bar by counsel for the exceptant that he had no knowledge of these letters until they appeared attached to the master's report. The master's report does not show that these counsel appeared at the hearings or that the letters were offered at the hearings. These exceptions are sustained. We will dispose of the case as though the attitude of the residuary legatees were not before us.

The seventh exception is dismissed.

The eighth, ninth and tenth exceptions relate to the master's final conclusion and are dismissed for the reasons already given.

With the modifications indicated, the report of the master is confirmed and a decree will be entered in the form recommended by him, dismissing the petition of Frank Deitrich, Jr., and directing specific performance of the sale to Leon Krauser.